<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANA M., | Civil Action No. 21-7780 (SDW) |
| Plaintiff, | **OPINION** |
| v. | May 23, 2022 |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Ana M.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Beth Shillin's ("ALJ Shillin") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Shillin's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

    A.      **Procedural History**

Plaintiff filed for DIB on February 4, 2019, alleging disability beginning on September 12, 2018, due to a laminectomy and right knee pain. (D.E. 7 (Administrative Record ("R.")) at 20, 187.) The state agency denied Plaintiff's application at the initial and reconsideration levels. (R. 95–97, 105–07.) ALJ Shillin held an administrative hearing on May 12, 2020, and issued a written decision on August 5, 2020, finding that Plaintiff was not disabled. (R. 21–29, 35–69.) The Appeals Council denied review on February 17, 2021. (R. 1–4.) Plaintiff then filed the instant appeal in this Court, and the parties completed briefing. (D.E. 1, 10, 17, 18.)

    B.      **Factual History**

Plaintiff is fifty years old and has a history of back problems. (R. 62, 766.) She has an 11th-grade education and previously worked as a kennel supervisor, office manager, recruiter, and cleaner. (R. 70, 188.) The following is a summary of the relevant medical evidence in the record.[2]

Plaintiff underwent a lumbar fusion in 2002 and managed the subsequent back pain with medication. (R. 766; *see e.g.*, R. 333–34.) However, Plaintiff reported an exacerbation of her back pain in July 2018. (R. 766; *see* R. 514–18.) In September 2018, Dr. David Wells-Roth, M.D., performed a laminectomy fusion on Plaintiff. (R. 733–35.) Plaintiff's surgery was followed by inpatient rehabilitation, during which time she walked the halls, crocheted, and went outside to enjoy the garden. (R. 348.) Her physician noted improved mobility and functional abilities, improved activity tolerance and balance, and decreased pain. (R. 473–74.) From October 2018

---

[2] Despite referencing almost 2,000 pages of medical records, (D.E. 10 at 1), Plaintiff failed to include a proper "statement of facts with references to the administrative record" in her moving brief, disregarding Local Civil Rule 9.1(e)(5)(C). The purpose of the section is not merely to summarize the procedural history of the case, but to provide an overview of Plaintiff's medical records, especially those records that support her disability claim.

through January 2019, Plaintiff continued her physical therapy as an outpatient. (R. 482–88, 494–509.) However, Plaintiff missed multiple appointments. (R. 481–82, 484–85.)

On a follow-up visit with Dr. Wells-Roth in January 2019, Plaintiff reported that she felt stabbing pain around the right knee but her pain had significantly improved. (R. 754.) Plaintiff also stated that she took medication to manage her pain. (*Id.*) While Plaintiff walked into the office with a back brace, Plaintiff had a normal gait, unlimited range of motion, and normal muscle tone and strength. (R. 754–55.) Dr. Wells-Roth prescribed aquatherapy and a TENS unit but also noted that Plaintiff no longer required any follow-up examinations. (R. 758.)

In a March 2019 function report, Plaintiff stated that she performs personal care but must sit to put on pants; uses a chair in the shower; walks, feeds, and grooms her dog; makes meals; does housework daily, including laundry, ironing, vacuuming, and cleaning the bathroom and kitchen; goes outside daily; drives and travels alone; shops in stores; and drops her child off at school. (R. 202–09.)

In April 2019, Plaintiff had a consultative examination with Dr. Samuel Wilchfort, M.D. (R. 766–70.) During the examination, Plaintiff reported chronic back pain and pain radiating down her right leg. (R. 766.) Dr. Wilchfort noted that Plaintiff cried at times due to the pain, but he opined that she was "somewhat histrionic." (*Id.*) Dr. Wilchfort also observed that Plaintiff still used a cane that was given to her at her surgery, mostly when she went outside. (*Id.*) Plaintiff's physical examination revealed positive straight leg raise tests, normal muscle strength, normal reflexes, decreased range of lumbar motion, and normal range of motion otherwise. (R. 766–67.) Her X-rays showed that her right knee film and the alignment were essentially intact. (*Id.*)

State agency consultants Dr. Leonard Nicosia, M.D., and Dr. Joseph Sobelman, M.D., reviewed Plaintiff's medical records in April and July 2019. (R. 76–80, 88–91.) Both doctors

3

opined that Plaintiff could perform light work with some postural and environmental restrictions. (R. 76–80, 88–91.)

From June 2019 through April 2020, Plaintiff saw Dr. Sami Yasin, M.D. (R. 1907–32.) Plaintiff reported feeling pain in her lower back, as well as weakness, numbness, and tingling in both legs. (*See id.*) Dr. Yasin noted that Plaintiff used a cane. (R. 1913.) Dr. Yasin found that while Plaintiff had lumbar tenderness on palpation, an irregular gait, and reduced lumbar range of motion, Plaintiff had a good range of motion in her cervical spine and extremities. (R. 1910–11.)

Concurrently, and relevant to this appeal, Plaintiff saw Dr. Donald Sugar, M.D., for pain management from August 2018 to March 2020. (R. 772–80, 864–67.) In her consultation with Dr. Sugar in October 2019, Plaintiff reported a back pain intensity of 10/10 without medication and 7/10 with medication. (R. 864.) In March 2020, Dr. Sugar opined on a form provided by Plaintiff's attorney that Plaintiff was unable to work. (R. 861.) On the same report, Dr. Sugar found that the impairments did not affect Plaintiff's ability to reach, handle, push, or pull. (*Id.*) Dr. Sugar also opined that Plaintiff had the ability to lift and carry 10 pounds occasionally and less than 10 pounds frequently. (R. 860.) He assessed Plaintiff's maximum ability to stand, walk, and sit during an eight-hour workday to be less than 2 hours with normal breaks. (*Id.*) He also assessed that Plaintiff can only sit or stand for five minutes before needing to change position, and that she needed to walk for ten minutes every fifteen minutes. (R. 860–61.)

### C. Hearing Testimony

At the administrative hearing on May 12, 2020, Plaintiff appeared with her attorney and testified before ALJ Shillin. (R. 35–61.) Plaintiff claimed that, prior to her 2018 surgery, she could not walk, had extreme pain, and was given a walker by the doctors. (R. 52–53.) Plaintiff testified that, following surgery, her physical therapy was unsuccessful and that she still has no

4

sensation in her right knee and experiences shooting pain. (R. 53.) Plaintiff stated that she has difficulty sitting, standing, and doing anything, even driving farther than a couple blocks from her house. (*Id.*) Plaintiff also alleged that the medications she takes make her sleepy and dizzy but do little to alleviate her pain. (R. 54.) She described her typical day, which involves using a back brace, cane, and heating pad, caring for her 14-year-old step-grandson, and taking frequent breaks to lie down. (R. 41, 55–58.) Plaintiff testified that she no longer crochets or goes outside to enjoy the garden because standing for a long period of time causes her pain. (R. 58.)

Warren Maxim ("VE Maxim"), an impartial vocational expert, also testified at the hearing. (R. 35, 61–68.) VE Maxim testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Shillin, could not perform Plaintiff's previous work, but could perform other jobs that exist in significant numbers in the national economy, including order clerk, document preparer, and call-out operator. (R. 63–64.)

## II.  LEGAL STANDARD

### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

8

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On August 5, 2020, ALJ Shillin issued a decision concluding that Plaintiff was not disabled from September 12, 2018 (the "alleged onset date") through the date of the decision. (R. 21–29.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 23.) At step two, the ALJ found that Plaintiff had the following severe

9

impairments: (1) status post L2-S1 fusion and revision of old L5-S1 laminectomy and (2) asthma. (*Id.*)³  At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing, including Listing 1.04 for spinal disorders and Listing 3.03 for asthma. (*Id.*)

> Assessing Plaintiff's RFC prior to step four, the ALJ found that Plaintiff could:
>
> [P]erform sedentary work . . . except . . . climb no ladders, scaffolds, or ropes, cannot use any heavy machinery and should avoid heights. [She] can occasionally climb stairs and ramps and occasionally crouch, crawl, stoop, kneel and balance. [She] can have no exposure to extremes of temperature or humidity. [She] can perform simple, repetitive and routine tasks. [She] should have an option to sit and stand at will within a workstation and should be able to change position every 10 to 15 minutes while remaining on task.

(R. 24.)  In making this assessment, ALJ Shillin gave less weight to the opinions of Drs. Sugar, Nicosia, and Sobelman, and gave more weight to the opinions of Drs. Wells-Roth and Wilchfort, as well as to Plaintiff's own function report. (*See* R. 25–27.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a kennel supervisor, office manager, recruiter, and cleaner. (R. 28.)  At step five, the ALJ relied on VE Maxim's testimony to find that Plaintiff could work as an order clerk, document preparer, or call out operator. (R. 29.)  ALJ Shillin therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

**B.  Analysis**

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision. (*See* D.E. 10 at 16.)  Plaintiff asserts that the ALJ (1) improperly evaluated Dr. Sugar's opinion evidence, (2) insufficiently considered Plaintiff' use of a cane, (3) insufficiently considered Plaintiff's son's

---

³ ALJ Shillin did not identify Plaintiff's right knee pain as a severe impairment because her X-rays were negative, she never went for an MRI, she never received significant treatment, and there was no right knee diagnosis. (R. 23.)

lay statements, and (4) did not resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles* (DOT). (*See id.* at 4–16; D.E. 18 at 1–14.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that it was "unreasonable" for the ALJ to find that Dr. Sugar's opinion was unpersuasive. (D.E. 10 at 6; *see* D.E. 10 at 4–9, D.E. 18 at 1–4.) An ALJ must "weigh[] each medical opinion based on various factors, including whether the opinion is supported by medical signs and laboratory findings, and is consistent with the record as a whole." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 133 (3d Cir. 2017) (citations omitted); *see* 20 C.F.R. § 404.1520c. Furthermore, "[a]n ALJ must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (citation and internal quotation marks omitted).

In evaluating Dr. Sugar's opinion, ALJ Shillin did precisely that, stating:

> I have considered the opinion of Dr. Sugar but do not find it to be persuasive. The claimant reported that she is able to cook, drive, clean the house, walk the dog and grocery shop, albeit with some limitations. Her daily living activities belie a complete inability to work. She also reported no trouble with concentration and attention. Based upon her activities it is apparent that the claimant is capable of sitting and standing for more than five minutes before needing to walk around for 15 minutes at a time. Moreover, Dr. Sugar is a pain management doctor and his medical notes are basically a recitation of the medications he has prescribed and contain almost nothing in the way of complaints or the condition of the claimant. As such, they provide no support for the extreme restrictions he has opined.
>
> I also note that these limitations are contrary to the reports of Dr. Wells-Roth who noted significant improvement from claimant's pre-op condition. The doctor reported that he was pleased with claimant's improvement (Exhibit 6F). Even rehabilitation records show the claimant was walking the halls, knitting and going out to enjoy the garden (Exhibit 4F). Lumbar x-ray was unremarkable (Exhibit 8F). Dr. Wilchfort noted that while the claimant was crying due to pain she appeared somewhat histrionic (Exhibit 8F). Moreover, his findings upon examination comport with the residual functional capacity I have assessed.

(R. 27.) ALJ Shillin provided clear rationales for her evaluation that Dr. Sugar's opinion was unpersuasive, including that it was (1) contradicted by Dr. Wells-Roth's opinion, Dr. Wilchfort's

11

opinion, X-ray evidence, other treatment records, and Plaintiff's own function report, and (2) unsupported by Dr. Sugar's own treatment notes,[4] which recited medications prescribed to Plaintiff with little additional objective information about Plaintiff's complaints and conditions. (*Id.*; *see* R. 202–09, 754–58, 766–80, 864–67.) "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader*, 575 F.2d at 437). ALJ Shillin did so here, thoroughly, and with support from substantial evidence in the record—*i.e.*, more than a mere scintilla. *See Bailey* 354 F. App'x at 616. A district court is not permitted to reweigh the evidence, *see Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005), and this Court will not do so here.

Second, Plaintiff argues that a remand is required because the ALJ's RFC assessment is silent with respect to Plaintiff's cane use. (*See* D.E. 10 at 9–10, D.E. 18 at 5–6.) "Although an ALJ must provide a logical connection between the evidence considered and the conclusion that the claimant is not disabled, he need not mention every piece of evidence in the record." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009). With respect to the use of a cane, Social Security Ruling (SSR) 96-9p requires "'medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the

---

[4] Plaintiff argues that Dr. Sugar's treatment notes supporting Plaintiff's limitations are compromised due to illegibility, and that she should not be "penalize[d] for her doctor's failure to keep detailed and easily legible notes." (D.E. 10 at 7.) "Even though an ALJ should assist a claimant to develop the record, the burden of proving her disability ultimately remains on Plaintiff." *Swanson v. Comm'r of Soc. Sec.*, Civ. No. 15-8894, 2017 WL 825199, at *6 (D.N.J. Mar. 2, 2017). Notably, ALJ Shillin did not suggest that she was unable to read Dr. Sugar's treatment notes. But even if some of the notes are difficult to read, they support ALJ Shillin's assessment that they are primarily a recitation of pain medications. (*See* R. 27, 772–80, 864–67.) Furthermore, there is no prejudice to Plaintiff in this situation: "Even if the illegible portions of Dr. [Sugar's] treatment notes were 100% consistent with his legible opinion as to Plaintiff's abilities, that opinion would still remain at odds with Plaintiff's own treatment history, abilities as assessed by other examiners of Plaintiff, and testimony and adult function report, which is the very ground upon which the ALJ afforded the opinion little weight." *Robertson v. Comm'r of Soc. Sec.*, Civ. No. 16-3331, 2017 WL 2779747, at *8 (D.N.J. June 27, 2017) (Bumb, J.).

circumstances for which it is needed[.]'" *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (quoting SSR 96-9p and rejecting claimant's argument that the ALJ was required to address his cane use where there were "multiple references to" his cane use in the record "but no discussion of its medical necessity").

Here, Plaintiff's physicians and the ALJ noted Plaintiff's cane use, (R. 25–26), but there is no medical evidence establishing that the cane was necessary. Nonetheless, ALJ Shillin considered Plaintiff's cane use when she restricted Plaintiff to sedentary work with the option to sit and stand at will. (*See* R. 27 ("I note the claimant continues to use a back brace and a cane and this has been considered when determining the residual functional capacity.").) Plaintiff does not reasonably suggest that she cannot work as an order clerk, document preparer, or call out operator because she uses a cane. The omission of cane use in the RFC was therefore not reversible error.

Third, Plaintiff alleges that the ALJ failed to consider the statements of her son, Nicholas.[5] (*See* D.E. 10 at 10–12, D.E. 18 at 7–9.) While ALJs may not "disregard all relevant evidence from third parties," they "need not articulate *how* they considered such evidence with the same type of requirements for medical opinions and prior administrative medical findings." *Aguiar v. Kijakazi*, Civ. No. 20-18551, 2022 WL 462093, at *9 (D.N.J. Feb. 15, 2022). Where an ALJ does not expressly address a third-party statement, "remand is not required [where such error] would not affect the outcome of the case." *Rutherford*, 399 F.3d 553; *see e.g.*, *Crosby v. Barnhart*, 98 F. App'x 923, 926 (3d Cir. 2004) (affirming the district court and ALJ, and holding that the ALJ's exclusion of the claimant's fiancé's affidavit describing the claimant's daily physical limitations was "harmless" because the affidavit "mirrored" the claimant's own description, which the ALJ had considered); *Buffington v. Comm'r of Soc. Sec. Admin.*, Civ. No. 12–100, 2013 WL 796311,

---

[5] This Court omits Plaintiff's son's last name to protect Plaintiff's privacy.

at *9, n.3 (D.N.J. Mar. 4, 2013) (holding that ALJ's failure to "explicitly" address claimant's father's "cumulative" testimony was harmless and "not grounds for remand").

Here, Plaintiff's son wrote a two-page email to Plaintiff's attorney that was substantively cumulative of Plaintiff's own testimony. (*Compare* R. 37–61, *with* R. 283–84.) Nicholas described his mom's difficulties with cleaning, doing chores, and carrying grocery bags. (R. 284.) Plaintiff also disclosed this information in her hearing testimony, and the ALJ considered it when assessing her RFC. (R. 25, 43–44.) The majority of Nicholas's email discussed a September 2018 incident in which his mother was in extreme pain but emergency room doctors did not properly treat her at first because her X-rays were negative. (R. 283–84.) Plaintiff also testified to this incident, stating that "[she] had gone to the emergency room a few times, and [she] kept explaining something was wrong, and they kept coming back with that there was nothing showing on the X-rays." (R. 52.) As Nicholas's email was cumulative of the medical records and hearing testimony that the ALJ expressly considered, the ALJ's failure to explicitly address the email was harmless error. *See Crosby*, 98 F. App'x at 926; *Buffington*, 2013 WL 796311, at *9. Remand is therefore not warranted.

Fourth, Plaintiff claims that the ALJ failed to resolve a potential conflict between the VE's testimony and the DOT because neither the VE nor the ALJ explained how someone limited to simple, routine, repetitive tasks can perform the jobs that the VE identified, which require a reasoning level of 3 according to the DOT. (*See* D.E. 10 at 12–15, D.E. 18 at 10–14.) "[T]here is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014). In determining whether a conflict exists, the district court can consider (i) whether the plaintiff "seriously argue[s] that she is incapable of performing

14

the jobs . . . recommended by the VE"; (ii) whether the plaintiff's "counsel [] identif[ied] any inconsistencies between the VE's testimony and the DOT at her hearing", and (iii) whether "the jobs listed by the VE were only representative examples—not an exhaustive list—of jobs that the [plaintiff] was capable of performing." *Id.* at 618–19.

Here, Plaintiff's counsel did ask VE Maxim whether the ALJ's "limitations to simple, routine, repetitive tasks would preclude the ability to carry out detailed written and oral instructions[.]" (R. 66.)[6] However, Plaintiff does not seriously argue that she cannot mentally perform the unskilled jobs that the VE identified: order clerk, document preparer, and call-out operator. Plaintiff has worked as a kennel supervisor, office manager, and recruiter, all of which demand higher reasoning levels than the jobs that the VE identified. (*See* R. 44–49, 62–69; D.E. 17 at 17–18.) She has no severe mental impairments, (R. 23–24), and there is no medical evidence showing that she is mentally incapable of performing these jobs. Moreover, when asked by the ALJ to name available jobs, the VE explicitly testified that the ALJ's "hypothetical would allow such things as" order clerk, document preparer, and call-out operator, even going so far as to explicitly label the last two jobs as his "second example" and "third example," respectively. (R. 63–64.) In other words, this was not an exhaustive list. Because two of the three *Zirnsak* factors are present, there is no conflict in this case between the VE's recommended reasoning level 3 jobs and Plaintiff's RFC. *See, e.g.*, *Nalej v. Berryhill*, Civ. No. 16-3079, 2017 WL 6493144, at *12 (D.N.J. Dec. 19, 2017) (holding that there was no *per se* conflict where two of three *Zirnsak* factors were present).

---

[6] Notably, VE Maxim did not answer in the affirmative and instead explained that "the Judge's hypothetical focused on unskilled work," which can include "detailed but uninvolved instructions." (R. 67.) He added that "[m]ore refined and more detail-involved instruction would fall outside of unskilled work, SVP: 1 and 2," without identifying a particular reasoning level. (*Id.*)

Reviewing the ALJ's decision and the medical record as a whole, it is clear that there is substantial evidence—more than a mere scintilla—to support the ALJ's decision that Plaintiff can perform a limited range of sedentary work, including the jobs that the VE identified. This Court will therefore affirm.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Shillin's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
UNITED STATES DISTRICT JUDGE

Orig: Clerk  
cc: Parties